**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JULIO CAMERENA,

                                        Petitioner,

            - v -                                           Civ. No. 9:07-CV-1306
                                                                    (TJM/RFT)

MARK BRADT, *Superintendent*,

                                        Respondent.

**APPEARANCES:**                              **OF COUNSEL:**

JULIO CAMERENA
99-R-0579
Petitioner, *Pro Se*
*Last Known Address:*
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902[1]

HON. ANDREW M. CUOMO                    JENNIFER L. JOHNSON, ESQ.
New York State Attorney General         PRISCILLA I. STEWARD, ESQ.
Attorney for Respondent                 Assistant Attorney Generals
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Petitioner Julio Camerena brings this Petition for a Writ of *Habeas Corpus*, pursuant

to 28 U.S.C. § 2254, alleging that his present confinement in state custody is in violation of the

---

        [1] According to the New York State Department of Correctional Services (DOCS) website, on August 13, 2010, Camerena was released from confinement and granted parole. *See* New York State DOCS, Inmate Population Information Search, *available at* http://nysdocslookup.docs.state.ny.us (last visited Dec. 10, 2010). Camerena's status as a parolee, however, does not deprive this Court of jurisdiction to entertain his Petition. The determining consideration for evaluating whether a petitioner meets the "in custody" requirement of the writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254(a), is the petitioner's status on the date his petition was filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Furthermore, when a state imposes restrictions and conditions on a parolee, the parolee's liberty has been significantly restrained and thus the underlying case or controversy is not moot. *Defio v. Henderson*, 935 F. Supp. 180, 182 (N.D.N.Y. 1996). Because Camerena was incarcerated in Elmira Correctional Facility when he filed his Petition, he fulfills the statutory "in custody" requirement, and because, upon information and belief, he is currently on parole and subject to New York State's restrictions, his Petition is not rendered moot by his conditional release.

Constitution of the United States. Camerena asserts the following grounds in support of his Petition: (1) he received ineffective assistance of trial counsel; (2) there was legally insufficient evidence to support his conviction; (3) his guilty verdict was against the weight of the evidence; and (4) he was deprived due process of law by the trial court's failure to properly administer an oath to the courtroom interpreter. Dkt. No. 1, Pet. For the reasons set forth below, this Court recommends that the Petition be **denied**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After a jury trial was conducted in New York State Supreme Court, St. Lawrence County, Petitioner Camerena was convicted of Promoting Prison Contraband in the First Degree under N.Y. PENAL LAW § 205.25(2). The following testimony was adduced at trial.

On April 18, 2005, Correction Sergeant Warren McLear was ordered by Lieutenant McNally to search the common area of a dormitory unit at the Riverview Correctional Facility for weapons, drugs, or any contraband. Dkt. No. 10-7, State Court R. [hereinafter "R."], Trial Tr., at pp. 163-64 & 169-71. McLear put the inmates on a "count" in order to clear the common areas to be seached. *Id.* at pp. 170-71. McLear then cleared the inmate bathroom. *Id.* at p. 172. Upon exiting the bathroom, he observed Petitioner, an inmate at the prison, heading toward the laundry room in violation of count policy, which requires inmates to go directly to their cubes. *Id.* at pp. 171-72. McLear testified that he observed Petitioner trying to conceal an object in his left hand by holding it near his body. *Id.* at p. 172. Though McLear ordered the Petitioner to stop, Petitioner turned around and headed for the dormitory door. *Id.* McLear testified that when Petitioner turned, he "could clearly see [that Petitioner] had something in his hand." *Id.* McLear said that he told the Petitioner to "take the pat frisk position" up against the wall, at which time he saw Petitioner slide

something inside the shirt he was wearing. *Id.* at pp. 172-73. McLear called Correction Officer Jay Beldock over and had Beldock conduct a pat frisk on Petitioner. *Id.* at pp. 173 & 201. As Beldock was performing the search, McLear said that he saw something fall from underneath Petitioner's clothing onto the floor near Petitioner's feet and that Petitioner tried to move his left foot over the item in an attempt to conceal it. *Id.* at pp. 173 & 198. On cross-examination, Beldock testified that he did not see the Petitioner with anything in his hand nor did he find any contraband on the Petitioner's person during the frisk; Beldock observed the object on the floor by Petitioner's foot, but only after McLear said he saw something fall from Petitioner's clothing. *Id.* at pp. 198 & 201-202. The object, introduced into evidence at trial, was a six and one-half inch metal rod, sharpened to a point at one end and with white cloth and string secured with white tape, forming a handle, on the other end. *Id.* at p. 174.

The Petitioner testified on his own behalf that he was only waiting near the laundry room to wash a bowl when McLear ordered the prison inmates to clear the area, and that upon hearing the order he immediately turned around and walked to the dormitory. *Id.* at p. 212. Converse to McLear's testimony, Petitioner testified that he had nothing in his hands and only an eye-drop bottle of perfume in his pocket, which he was allowed to have. *Id.* at pp. 212 & 220. Petitioner said that McLear "threw [him] against the wall" and that Beldock searched him, but they did not find anything. *Id.* at pp. 217-18. Petitioner testified that he was starting to walk away when McLear said that something was on the ground and picked up the sharpened metal rod from the floor a few feet away from the Petitioner. *Id.* at pp. 218-19. Petitioner claimed that there were approximately fifteen (15) other inmates in the immediate area at the time. *Id.* at p. 215.

Rule 113.10 of the Inmate Rules and Regulations, a handbook distributed to the inmates

describing the correctional facility's standards of inmate behavior, classifies the sharpened metal rod, or "the shank" as it was described throughout trial testimony and in the prosecution's exhibit sheet description, as contraband because it could be used as a weapon.  Dkt. No. 10-1, R., People's Ex. Sheet, at p. 25; Trial Tr. at pp. 175-77.  The Rules and Regulations are provided to inmates in English and Spanish, and the Petitioner signed a receipt that stated he received a copy of the rules and also admitted at trial that he was familiar with the rules against such contraband.  Trial Tr. at pp. 178-80, 226, & 229-30.

On April 27, 2006, the jury found the Petitioner guilty of the crime of Promoting Prison Contraband in the First Degree.  *Id.* at pp. 273-74.  Petitioner was deemed a second felony offender and sentenced to an indeterminate prison term of two and one-half to five years.[2]  Dkt. No. 10-1, Sentencing Hr'g. Tr., dated June 14, 2006, at pp. 63-69.  Petitioner appealed the conviction to the New York State Supreme Court Appellate Division, Third Judicial Department, rasing the same claims repeated in his instant *Habeas Corpus* Petition.  *See* Dkt. No. 10-1, R., Pet'r Appellate Br. On July 26, 2007, the Appellate Division unanimously affirmed the judgment of the trial court. *People v. Camerena*, 839 N.Y.S.2d 635 (N.Y. App. Div., 3rd Dep't 2007).  Leave to appeal to the New York State Court of Appeals was denied on September 20, 2007.  *People v. Camerena*, 875 N.E.2d 895 (N.Y. 2007).  On December 17, 2007, Camerena filed the instant *Habeas Corpus* Petition pursuant to 28 U.S.C. § 2254.  Respondent concedes that Camerena's Petition is timely. Dkt. No. 9, Resp't Mem. of Law, at pp. 6-7.

---

[2] Camerena had previously been convicted, on December 14, 1998, of two felony crimes, Criminal Possession of a Weapon in the Second Degree, a Class C felony, and Criminal Possession of a Weapon in the Third Degree, a Class D felony.  Sentencing Hr'g Tr. at p. 66.  At the time this incident at Riverview occurred, Camerena was serving time for these felony convictions.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the

state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B. Ineffective Assistance of Counsel

Camerena alleges in his Petition that he received ineffective assistance of trial counsel when his trial counsel failed to meaningfully object to the prosecution's presentation at trial, preserve issues for review, effectively cross-examine the prosecution's witnesses, and deliver satisfactory opening and closing statements.  *See* Pet. at pp. 11-15.  Petitioner cites examples of testimony that he alleges consisted of "improper questions and answers without foundation during the prosecutor's questioning," but that his defense counsel did not object to.  *Id.* at pp. 12-13.  Petitioner also maintains that his trial counsel provided ineffective assistance by failing to object to the introduction of the Inmate Rules and Regulations into evidence, and by failing to object to portions of the prosecution's summation.  *Id.* at pp. 13-14.  Additionally, Petitioner claims that his defense counsel failed to preserve the issue of insufficient evidence, performed ineffective cross-examination, and provided opening and closing statements that "would have been better not uttered."  *Id.* at pp. 14-15.

The Appellate Division addressed and rejected these claims on Petitioner's direct appeal, finding that Petitioner's "trial counsel capably challenged the testimony of the People's witnesses by bringing out inconsistencies and exploring their potential biases."  *People v. Camerena*, 839 N.Y.S.2d at 636.  In accordance with the AEDPA, this Court must decide whether that state court determination constituted an unreasonable application of clearly established federal law.

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a *habeas* petitioner must show that: 1) his attorney's representation was deficient such that it fell below an

objective standard of reasonableness measured by the prevailing professional norms; and 2) this deficient performance prejudiced his defense such that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[3]  In determining the reasonableness of counsel's representation, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'"  *Strickland v. Washington*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

After reviewing the record before us and the trial transcript in its entirety, this Court agrees with the Appellate Division that Camerena's trial representation did not amount to ineffective assistance of counsel.  With regard to Petitioner's claim that his counsel failed to object at purportedly pertinent points at trial, we agree with the Appellate Division's finding that "most, if not all, of the objections that [Petitioner] suggests his counsel should have made would have had no legitimate basis . . . and would have been irrelevant or inconsequential."  *People v. Camerena*, 839 N.Y.S.2d 635 (internal citations omitted).  Counsel's failure to make a meritless objection or "argument does not amount to ineffective assistance."  *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999); *see also Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (finding the failure to raise a meritless claim "does not fall outside the wide range of professionally competent assistance to

---

[3] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

which Petitioner was entitled") (internal quotation marks and citations omitted).  Furthermore, the record indicates that, contrary to Petitioner's claims, his trial counsel actively participated in his defense.   During a *Sandoval*[4] hearing, counsel successfully limited the prosecution's use of Petitioner's prior crimes and disciplinary record in cross-examining Petitioner in order to avoid any undue prejudice.  Dkt. No. 10-6, Trial Tr., at pp. 5-12.  Additionally, Petitioner's trial counsel pursued the reasonable strategy of challenging the origin of the sharpened metal rod.  He elicited, through cross-examination of the prosecution's witnesses, that no weapon was ever found on the Petitioner's person, no fingerprints were ever taken from the metal rod, the correction officers could not recall what type of clothing Petitioner was wearing on the date in question, and Officer Beldock never actually saw the metal rod fall from the Petitioner's clothing.  Dkt. No. 10-7, Trial Tr., at pp. 189-92 & 201-02.

Counsel also presented direct evidence in the case by having the Petitioner testify at trial. Through this testimony, the defense presented Petitioner's version of the incident.  Defense counsel effectively elicited testimony that Officer McLear might have had a possible bias against the Petitioner, stemming from an incident where McLear allegedly accused Petitioner of smoking in the bathroom against prison policy; counsel also pursued the theory that there were other inmates in the immediate vicinity where the weapon was found, thus casting doubt upon the origin of the weapon. *Id.* at pp. 213-16.  During his summation, counsel reiterated and framed his position that reasonable doubt and factual uncertainties existed regarding the origin and possession of the weapon.  *Id.* at pp. 237-40.  Because Petitioner did not state any specific objection to his counsel's seemingly legitimate

---

[4] *See People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974).  A *Sandoval* hearing is "an evidentiary hearing held to determine whether, if the defendant testifies, his prior convictions may be admitted to impeach his credibility." *Shannon v. Lenkowski*, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000) (citing *Sandoval*).

summation, this Court is unsure what exactly Petitioner was opposed to, besides the jury's ultimate adverse finding of guilt.

Additionally, Petitioner claimed that his trial counsel was at fault for failing to preserve Petitioner's claim regarding the sufficiency of the evidence adduced at trial when, at the end of the trial, Petitioner's counsel failed to renew his motion to dismiss the indictment, which counsel initially made at the end of the prosecution's evidence. Pet. at p. 14; Dkt. No. 10-7, Trial Tr., at p. 206. The Appellate Division, however, specifically found that Petitioner's claim was in fact preserved for review by counsel's unsuccessful motion to dismiss at the close of the prosecution's case. *People v. Camerena*, 839 N.Y.S.2d at 636. Therefore, counsel's purported failure to renew his motion did not amount to deficient performance, as Petitioner's claim of legally insufficient evidence was preserved for, and considered on, appellate review by counsel's prior motion to dismiss. Finally, Petitioner argues that his counsel should have objected to alleged misstatements by the prosecutor during his summation. Pet. at p. 14. However, the trial court had previously instructed the jury that closing arguments are not evidence to be considered, and reiterated that instruction at the close of summations. Dkt. No. 10-7, Trial Tr., at pp. 236 & 246. Juries are presumed to have followed the court's instructions. *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993). The decision not to object to the prosecution's alleged misstatements, and thus draw the jury's attention to facts in the prosecution's summation that were not to be considered as evidence, can be characterized as a strategic legal decision that did not amount to deficient representation.

Therefore, after a thorough review of the record, we cannot conclude that Camerena's trial counsel's representation or performance was objectively unreasonable. As such, we need not discuss *Strickland*'s second inquiry of whether the deficient performance actually prejudiced the

Petitioner. Because, for the above reasons, the Appellate Division's determination of this claim was not an unreasonable application of established federal law, we recommend Petitioner's ineffective assistance of trial counsel claim be **denied**.

### C. Legally Insufficient Evidence

Petitioner claims that the evidence expounded against him at trial was legally insufficient to support a conviction of Promoting Prison Contraband in the First Degree, and, therefore, his due process rights were violated. Specifically, Petitioner asserts that there was no evidence at trial sufficient to establish that he possessed the sharpened metal rod that was recovered from the floor. Pet. at pp. 17-18. Petitioner argues that there were garbage pails and other inmates in the vicinity where the correction officers performed the frisk on Petitioner, and that Officer Beldock did not hear anything hit the floor when he was frisking the Petitioner. *Id.* at p. 18. The Appellate Division rejected this claim when it was presented on direct appeal, finding that the testimony at trial "supports the reasonable inference that [Petitioner] possessed the rod and provided a valid line of reasoning by which the jury could find that he committed the crime charged." *People v. Camerena*, 839 N.Y.S.2d at 636 (internal citations omitted). Pursuant to the AEDPA, we must now determine whether that conclusion constituted an unreasonable application of established federal law.

A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citation omitted). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). This inquiry "does not focus on whether the trier of fact

*-10-*

made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). A *habeas* petitioner claiming that there was insufficient evidence to support a conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995). A federal *habeas* court must look to state law to determine the elements of a crime when considering a challenge based upon the sufficiency of evidence. *See Jackson v. Virginia*, 443 U.S. at 324; *Ponnapula v. Spitzer*, 297 F.3d at 179. The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson v. Virginia*, 443 U.S. at 319.[5] Additionally, "when reviewing the sufficiency of the evidence, [the court] defers to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." *Parisi v. Burge*, 2007 WL 496463, at *1 (N.D.N.Y. Feb. 12, 2007) (internal quotation marks and citation omitted); *see also Harris v. Allard*, 2002 WL 31780176, at *2 (S.D.N.Y. Dec. 11, 2002).

Under New York law, a person is guilty of Promoting Prison Contraband in the First Degree when, "[b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains, or possesses any dangerous contraband." N.Y. PENAL LAW § 205.25(2). Further, "dangerous contraband" is defined as "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein." N.Y. PENAL LAW § 205.00(4). The evidence presented at trial, when viewed in a light most favorable to the prosecution, established that

---

[5] The *Jackson* standard is clearly established federal law as determined by the Supreme Court. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 276 n.5 (E.D.N.Y. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir. 2000)) (other citation omitted); *see also Santana v. Kuhlmann*, 232 F. Supp. 2d 154, 166-67 (S.D.N.Y. 2002).

after being ordered to go to his cube, Petitioner was observed skulking off to the laundry room while attempting to conceal an object from view, and that a sharpened metal rod with a cloth handle fell from beneath Petitioner's clothing when another correction officer frisked him, which the Petitioner then tried to cover with his foot.  Additionally, the jury heard evidence that sharpened metal rods, or homemade shanks, are not unique to prisons and can cause severe damage or bodily harm to correction officers or other inmates.  Dkt. No. 10-7, Trial Tr., pp. 174-77.  Based on that evidence, it was rational for the jury to conclude that Petitioner knowingly and unlawfully possessed dangerous contraband in violation of New York Law.

Therefore, we find that the Appellate Division's rejection of Petitioner's insufficient evidence claim was not an unreasonable application of federal or state law, and we recommend that this claim be **denied**.

### D. Weight of the Evidence

Petitioner further contends that to the extent this Court rejects his claim that the conviction was not supported with legally sufficient evidence, the jury's verdict was nonetheless against the weight of the evidence.  Pet. at pp. 17-18.  The Appellate Division rejected this claim "after independently reviewing the evidence in a neutral light and according deference to the jury's credibility determinations."  *People v. Camerena*, 839 N.Y.S.2d at 636 (internal citations omitted).  Petitioner's claim that the verdict was against the weight of the evidence, however, is not cognizable on federal *habeas* review.

"[A] challenge to a verdict based on the weight of the evidence is different from one based on the sufficiency of the evidence.  Specifically, the 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal

sufficiency claim is based on federal due process principles." *Garbez v. Greiner*, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) (citation omitted). It is well established that *habeas corpus* review is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). As such, no cognizable federal issue is presented by a *habeas* claim challenging the weight of the evidence adduced at trial. *Cardena v. Giambruno*, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004); *Glisson v. Mantello*, 287 F. Supp. 2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases)); *McBride v. Senkowski*, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)). Thus, Petitioner does not assert a federal claim as required by 28 U.S.C. § 2254(a). *Camacho v. McKinney*, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004) ("[P]etitioner's first ground . . . arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding."); *Brown v. Fischer*, 2004 WL 1171277, at *6 (S.D.N.Y. May 27, 2004) ("It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.") (citations omitted). Petitioner's weight of the evidence claim must therefore be **denied**.

### E. Deprivation of Due Process By Court's Failure to Properly Swear in Interpreter

In his final claim, Petitioner complains that there was no indication on the record that the court-appointed interpreter was properly sworn to interpret accurately and truthfully between Spanish and English, and thus, his due process rights to a fair trial were violated. Pet. at pp. 21-22. Petitioner specifically takes issue with the fact that the first interpreter, whom Petitioner seems to claim was properly sworn, was replaced with another interpreter due to trial delays. *Id.* at p. 21. Petitioner states that there was no indication in the record that the subsequent translator was likewise

*-13-*

properly sworn, and he points to the fact, apparently as evidence of his claim, that the trial transcript only says that "an oath was administered" instead of explicitly spelling out the nuances of the oath. Pet. at pp. 21-22; Dkt. No. 10-6, Trial Tr., at p. 4. Regardless of the merits of Petitioner's claim, the claim is procedurally defaulted as it was previously decided on an adequate and independent state ground.

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). "This rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a *habeas* petition. *Harris v. Reed*, 489 U.S. at 264 n.10. This bar on *habeas* review applies even when a state court issues an alternative holding addressing a procedurally defaulted claim on the merits. *See id.*; *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (*per curiam*) ("[W]e are barred from reaching the merits of [petitioner's ] . . . federal claims [because the ] . . . state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

On Petitioner's direct appeal, the Appellate Division held that Petitioner failed to preserve for review his claim that deficiencies in the courtroom interpreter's oath deprived him of his due process rights. *People v. Camerena*, 839 N.Y.S.2d at 636. The court added that Petitioner's claim was nonetheless without merit. *Id.* By holding that the claim was not preserved for appellate review, the Appellate Division decided the claim on state procedural rules independent of any federal question. The court's alternative holding on the merits does not excuse the explicit invocation of a procedural bar such that a federal court could review the claim. *See Garcia v. Lewis*, 188 F.3d at 77 (citing *Harris v. Reed*, 489 U.S. at 264 n.10).

A procedural bar is adequate for purposes of *habeas* review if it is based on a rule that is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). New York's preservation requirement, which demands that in order to preserve an issue for appeal, the defendant must specifically focus on the alleged error such that the defendants "make[s] his or her position known to the [trial] court," *People v. Gray*, 652 N.E.2d 919, 921 (N.Y. 1995), is firmly established and regularly followed, as shown by relevant case law. *See, e.g., Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.") (citation omitted); *People v. Parsons*, 816 N.Y.S.2d 271, 271 (N.Y. App. Div, 4th Dep't 2006) ("Defendant failed to preserve for our review his further contention . . . inasmuch as his motion to dismiss was not specifically directed at that alleged insufficiency."); *People v. Rodriguez*, 693 N.Y.S.2d 54, 55 (N.Y. App. Div. 2d Dep't 1999) (finding defendant's claim was "unpreserved for appellate review since it was not advanced with specificity before the trial court"). Therefore, because the state law ground relied

-15-

upon when deciding this claim was independent of the federal question and adequate to support the decision of the state court, Petitioner's due process challenge to the oath administrated to the Spanish and English interpreter is procedurally barred in this Court.

When a claim in a federal *habeas* petition is procedurally defaulted, it cannot be heard by the federal reviewing court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[6] *Coleman v. Thompson*, 501 U.S. at 750; *Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman*); *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (stating the court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence").  To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with New York's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).  Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. *Murray v. Carrier*, 477 U.S. at 488.

Petitioner has not demonstrated legal cause sufficient to excuse the procedural default of his claim.  As previously examined, Petitioner claimed that he suffered ineffective assistance of counsel. While Petitioner does not specifically argue that his counsel failed to preserve this claim, this Court

---

[6] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

will interpret his claim in light of the leniency accorded to *pro se* litigants.  *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) ("We construe complaints filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest.").  Nonetheless, as detailed above, this Court has found Petitioner's claim of ineffective assistance of counsel to be meritless. Camerena has not alleged or stated any other facts that would support a finding of cause for his procedural default.  Inasmuch as he cannot establish such cause, this Court need not decide whether he also suffered actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated.  *See, e.g.*, *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.) (citing *Stepney*).  Moreover, Petitioner has not established that a fundamental miscarriage of justice would occur if the Court could not adjudicate his federal claims such that he is actually innocent of the crime he was convicted of.  Therefore, the Court recommends Petitioner's claim that his due process rights were violated because the court interpreter was not properly sworn be **denied** as procedurally defaulted and barred from federal review.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims.  *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   December 22, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge